IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


DAVID F. POLLOCK, as Executor      )
of the Estate of Margaret F.       )
Pollock, JOHN T. DIBIASE, JR.,     )
JOHN S. FRAYTE, PATRICIA L.        )
CHRISTOPHER, LOUIS A. VECCHIO      )
and BESSIE P. VECCHIO, BARBARA     )
A. MORRIS, GENE M.VIRGILI and      )
ERIN R. VERGILI, LLOYD R. SHAFFER, )
III, STUART W. WHIPKEY, on Behalf  )
of Themselves and All Others       )
Similarly Situated                 )      Civil Action No. 10-1553
                                   )
            Plaintiffs,            )
                                   )
        v.                         )
                                   )
ENERGY CORPORATION OF AMERICA,     )
                                   )
            Defendant              )


REPORT AND RECOMMENDATION

I.  Recommendation

        Presently before the Court is Defendant's, Energy

Corporation of America's ("ECA"), motion to dismiss the amended

class action complaint (Doc. No. 14) filed by the Plaintiffs,

David F. Pollock, et al. ("the Plaintiffs").  For the reasons

that follow, it is respectfully recommended that the motion be

granted in part and denied in part.


II. Report

    A.  Factual and Procedural History

Plaintiffs are Pennsylvania landowners who entered into oil and gas leases with ECA. On March 4, 2011, the Plaintiffs filed an amended class action complaint claiming that ECA breached the subject leases by: 1) taking impermissible volumetric deductions in calculating the gas royalty; 2) using the incorrect price of gas sold when calculating the royalty; 3) taking excessive and unauthorized expense deductions when calculating the gas royalty; and, 4) paying no oil royalty or underpaying the oil royalty. The Plaintiffs further averred that they did not discover the breaches until the autumn of 2010 because ECA concealed the breaches by issuing accounting statements on the royalty check stubs that contained misrepresentations and omitted material facts.

In count two of the amended complaint, the Plaintiffs allege a suspicion that the royalty payments on the leases have been incorrectly calculated and demand an accounting.

ERA argues that the amended complaint should be dismissed for four reasons: 1) the claim that ECA took wrongful volumetric deductions is foreclosed by the Pennsylvania Supreme Court's decision in Kilmer v. Elexco Land Services, 605 Pa. 413, 990 A.2d 1147 (2010); 2) the amended complaint does not meet the pleading standards of Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009); 3)

the amended complaint does not adequately plead an anticipatory defense of fraudulent concealment; and, 4) the prerequisites for an accounting claim have not been sufficiently pled.

B. Discussion

1) Sufficiency of Allegations of Complaint

The United States Supreme Court opinions in Twombly, and, more recently, in Iqbal, have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. The Supreme Court outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 129 S. Ct. at 1950. A claim is facially plausible when the plaintiff pleads facts that permit a court to draw a reasonable inference that the defendant could be liable for the malfeasance alleged. Id. at 1949. In determining if the standard has been met, courts should consider the specific nature of the claim

3

presented and the facts pled to substantiate that claim.  <u>In re</u>
<u>Insurance Brokerage Antitrust Litigation</u>, 618 F. 3d 300, 320,
n.18 (3d Cir. 2010).

To recover for a breach of contract in Pennsylvania, a
plaintiff must establish that a contract exists, that the
contract was breached, and that the breach caused the
plaintiff's damages.  <u>Liss & Marion, P.C. v. Recordex</u>
<u>Acquisition Corporation</u>, 603 Pa. 198, 221, 983 A.2d 652, 665
(2009)(citing <u>Ferrer v. Trustees of University of Pennsylvania</u>,
573 Pa. 810, 825 A.2d 591 (2002)).

ECA contends that the Plaintiffs' breach of contract
claim must be dismissed because it does not comport with the
pleading requirements of <u>Twombly/Iqbal</u>.  ECA acknowledges that
the Plaintiffs have adequately pled the first element of a
breach of contract claim – the existence of a contract,
including its essential terms.  The deficiency of the complaint,
according to ECA, is that, even accepting the Plaintiffs' claims
that they each have an oil/gas lease with ECA, that oil/gas was
produced, and that royalties were paid under each of the leases
as true, these contentions do not make the Plaintiffs' claim
that ECA underpaid royalties factually plausible.  ECA takes
particular issue with those paragraphs in the amended complaint
that utilize the pleading nomenclature "upon information and
belief," when alleging that ECA breached the subject leases by

calculating the amount of royalty due based upon a price that was less that the amount paid for the gas to ECA by third parties, Am. Comp. ¶¶ 39, 66, and that ECA took deductions from the royalties that exceed its actual costs of transportation, processing, and manufacturing. Id. at ¶¶ 41, 66.

A review of the factual allegations of the complaint allows a conclusion that the Plaintiffs have met the pleading requirements of Twombly/Iqbal.

In the breach of contract count, the Plaintiffs declare that they are each parties to an oil/gas lease with ECA, that oil/gas was produced under each lease, and that royalties were paid under each of the leases. Am. Comp. ¶¶ 58-60. The Plaintiffs then state that ECA breached the leases by taking impermissible volumetric deductions in calculating gas royalties. Id. at ¶ 61. In prior paragraphs, incorporated by reference into the breach of contract count, the Plaintiffs describe the specifics of the underpayment: ECA failed to pay royalties on gas: 1) used or lost between the wellhead and point of sale; 2) lost or which became unaccounted for during the production and transportation of the substance[1]; and, 3) used by

---

[1]    In 2010, ECA included a provision in its leases that it was not obligated to pay royalty on gas that was lost or unaccounted for during production or transportation. Therefore, with regard to these leases, there is no allegation that ECA has breached the agreements by taking impermissible volumetric deductions when calculating the royalties. Am. Compl. ¶ 61.

ECA both on and off the leasehold premises. Am. Compl. ¶¶ 33-35. The Plaintiffs further complain that even if the subject leases did permit ECA to take deductions for used or lost gas, "ECA breached the leases by deducting 'allocated' line loss rather than 'actual' line loss." Id. ¶ 36. These assertions satisfactorily detail how the gas subject to the royalty agreement was either miscalculated or misused and, therefore, include "sufficient factual matter" to demonstrate that the breach of contract claim is facially plausible and "allows the court to draw the reasonable inference" that ECA breached the agreements. Iqbal, 129 S. Ct. at 1948.

The Plaintiffs' breach of contract claims premised upon their "information and belief" that ECA's payments were not in conformity with the lease requirements also pass the Twombly/Iqbal sniff test. First, Twombly/Iqbal do not suggest that pleading on information and belief is "'necessarily deficient.'" Cf. Brinkmeier v. Graco Children's Products Inc., Civil Action No. 09-262-LPS, 2011 WL 772894, at * 6 (D.Del. March 7, 2011) (quoting Simonian v. Blistex, Inc., No. 10 CV 01201, 2010 WL 4539450, at *3 (N.D. Ill. November 3, 2010)) Second, these paragraphs do not merely claim that the Plaintiffs were underpaid; they instead contend that ECA miscalculated the amount of royalty due based upon a price that was less that the amount paid by third parties to ECA, took excessive deductions

from the royalties, and deducted excessive amounts on behalf of its post-production affiliates. These facts permit the court to draw a reasonable inference that ECA breached the royalty agreements in the manner alleged.

Finally, the Plaintiffs have, at this stage of the proceeding, pled the basic facts to support a breach of contract claim concerning ECA's failure to pay royalties on oil - ECA agreed to pay for oil from the leasehold, oil was produced, and ECA did not pay. Accepting these facts as true, they are sufficient to demonstrate that the Plaintiffs have a plausible claim for relief for breach of contract. It is, therefore, respectfully recommended that the motion to dismiss for failure to comply with the <u>Twombly/Iqbal</u> pleading requirements be denied.

### 2. <u>Kilmer v. Elexco Land Services</u>

Having determined that the factual allegations of the complaint are sufficient to support a breach of contract claim, it remains to be decided whether these factual allegations, taken as true, suggest entitlement to relief. This inquiry implicates ECA's argument that the Plaintiffs' claim for recovery of royalties related to volumes of gas used or lost before the point of sale is foreclosed by the Pennsylvania Supreme Court's decision in <u>Kilmer v. Elexco Land Services</u>, 605 Pa. 413, 990 A.2d 1147 (2010).

In __Kilmer__, Pennsylvania landowners sought a declaratory judgment to invalidate certain oil and gas leases. The issue was whether the royalty calculation method specified in their leases[2] violated the Guaranteed Minimum Royalty Act ("GMRA"), 58 P.S. § 33, provision mandating that leases conveying the right to remove or recover oil and natural gas must guarantee the lessor at least one-eighth royalty of all oil or natural gas removed or recovered from the subject real property.

The Pennsylvania Supreme Court exercised extraordinary jurisdiction to determine the proper construction of the term "royalty" as the GMRA does not define the word nor does it provide a methodology for calculating royalties.

---

[2]     The leases provided for the calculation of royalties as follows:

    3. Royalty Payment. For all Oil and Gas Substances that are produced and sold from the leased premises. *Lessor shall receive as its royalty one eighth (1/8th) of the sales proceeds actually received by Lessee from the sale of such production, less this same percentage share of all Post Production Costs,* as defined below, and this same percentage share of all production, severance and ad valorem taxes. As used in this provision, Post Production Costs shall mean (i) all losses of produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression, treatment, processing, marketing and transportation costs incurred in connection with the sale of such production. For royalty calculation purposes, Lessee shall never be required to adjust the sales proceeds to account for the purchaser's costs or charges downstream from the point of sale.

    __Kilmer__ , 990 A.2d at 1150.

8

The _Kilmer_ Court first observed that the term "royalty" has been defined in the oil/gas industry as "`[t]he landowner's share of production, free of expenses of production.'" _Id_. at 1157 (citation omitted). Production expenses include those costs incurred in drilling wells and bringing the product to the surface, but exclude the post-production costs of transporting the oil/gas from the wellhead to the point of sale. _Id_. The parties joined issue over whether the post-production costs related to processing the gas and transporting it the point of sale should be factored into the royalty calculation. The specific question before the Court was whether the GMRA permits contracting parties to utilize the "net-back" method to determine the amount of royalties payable under an oil/gas lease. Under this method, royalties are calculated as "one-eighth of the sales price of the gas minus one-eighth of the post-production costs of bringing the gas to the market." 990 A.2d at 1149. The gas companies urged the Court to conclude that the GMRA contemplated utilization of the net-back method to compute royalty payments. The landowners, in contrast, argued that the plain language of the statute required that they be paid a one-eighth royalty of the gross proceeds of the sale, and that the lessees must bear the entire onus of the post-production costs.

The _Kilmer_ Court construed the subject leases as requiring that the lessors share the post-production costs and that the gas companies were solely responsible for all of the production costs. The Court then concluded that "the GMRA should be read to permit the calculation of royalties at the wellhead, as provided by the net back method in the Lease," _Id_. at 1158. Thus, _Kilmer_ holds that a producer can calculate royalties as one-eighth of the sale price of the gas minus one-eighth of the post-production costs of getting the gas to the market.

In its motion to dismiss, ECA argues that the _Kilmer_ Court approved the calculation of royalties based upon the net price of gas actually sold. For this reason, ECA asserts that gas that is lost or unaccounted for before the point of sale is not sold and the lessees are not entitled to one-eighth royalty on this gas. ECA acknowledges that, unlike the subject leases[3], the _Kilmer_ leases expressly included "all losses of produced volumes" in their enumeration of post-production costs, but insists that _Kilmer's_ definition of royalty as per the net-back method, applies broadly to all oil/gas leases in Pennsylvania,

---

[3] Except for the Vecchio and Morris leases, the leases at issue provide for a royalty of "one-eighth of the net proceeds received by lessee from the sale of all gas produced, saved, or sold" from the landowners' property. Am Compl. Ex. 1. The Vecchio and Morris leases calculate the royalty as "an amount equal to one-eighth of the price received from the sale of such gas . . . at the wellhead." _Id_.

regardless of whether a lease describes the particulars of the post-production costs that can be deducted from the gross sales price. ECA thus advocates an expansive reading of _Kilmer_, consistent with the decision's underlying rationale that, in conformity with industry custom, lessees and lessors should share post-production costs.

The Plaintiffs offer a counter-reading of _Kilmer_ and argue against a broad application of its holding. The Plaintiffs argue that because the leases at issue, unlike those dissected in _Kilmer_, do not specifically provide for a deduction for lost gas from the royalty, ECA breached the leases when it did not pay royalties on that category of gas. The Plaintiffs attach significance to the fact that ECA has lately changed the language of its leases to specifically provide that it is not obligated to pay a royalty on lost or unaccounted for gas. See n. 1, _supra_. The Plaintiffs further contend that, under ECA's interpretation of _Kilmer_, producers would be able to unilaterally and arbitrarily deduct any category of post-production costs. Finally, the Plaintiffs assert that even if the leases can be read to permit the lost/unaccounted for gas deduction, ECA breached the leases by deducting amounts reflecting allocated, rather than actual, loss.

The Plaintiffs' argument for a narrow reading of _Kilmer_ has been addressed and rejected by other federal courts.

In <u>Ulmer v. Chesapeake Appalachia, LLC</u>, No. 4:08-cv-2062, 2011 WL 1344596 (M.D. Pa. April 8, 2011), a landowner argued that the <u>Kilmer</u> decision did not speak to the validity of his oil/gas lease because it provided for different post-production costs that were not expressly sanctioned by <u>Kilmer</u>. The district court rejected this argument and reiterated its observation from prior cases it decided concerning the reach of the <u>Kilmer</u> decision:

> <u>Kilmer</u> is properly read broadly in light of the fact that the Pennsylvania Supreme Court granted extraordinary jurisdiction to resolve the purely legal question of whether post-production costs are proper under Pennsylvania oil and gas law. The Pennsylvania Supreme Court recognized the more than seventy lawsuits, including the instant matters, pending in the Pennsylvania State and Federal Courts and the potential for stymied economic development when deciding to grant extraordinary jurisdiction to resolve this legal issue once and for all. Applying common sense to the matter, it is evident that the Pennsylvania Supreme Court surely considered that all of the leases that would be affected by their decision were not identical, thus their holding cannot be strictly applied only to leases that are on all fours to the lease in <u>Kilmer</u>. Such an application of <u>Kilmer</u>, or, rather, a non-application of <u>Kilmer</u>, defies both common sense and the concept of precedent.
>
> It is our considered view that the <u>Kilmer</u> Court did not make their holding so narrow as to only apply to the lease at issue in <u>Kilmer</u>. Thus, we find, despite Plaintiffs' protestations to the contrary, that it is precisely *not* the holding of

> Kilmer that post-production costs must be
> divided into one-eighths born by the Lessor
> and seven-eights born by the Lessee for the
> lease to be valid. Nor do the post-
> production deductions provided for in the
> leases need to be identical to the Kilmer
> deductions to be valid. The holding of
> Kilmer is that the GMRA permits the
> calculation of the royalties at the wellhead
> utilizing the net-back method. That is
> exactly what the leases here provide, and as
> a result, we decline to void them.

Ulmer, id. at *2. See also Carey v. New Penn Exploration, LLC, Civil Action No. 3:09-CV-188, 2010 WL 1754440 (M.D.Pa. April 28, 2010); Puza v. Elexco Land Services, Inc., Civil Action No. 3:09-CV-589, 2010 WL 1791150 (M.D.Pa. May 3, 2010); Julia v. Elexco Land Services, Inc., Civil Action No. 3:09-CV-590, 2010 WL 1904245 (M.D.Pa. May 11, 2010); Kropa v. Cabot Oil & Gas Corporation, 716 F. Supp. 2d 375 (M.D.Pa. 2010).

Second, the Plaintiffs overstate the breadth of ECA's Kilmer argument. As the Court understands ECA's position, all that it is arguing at this stage is that Kilmer endorses calculation of royalties at the wellhead, as provided by the net back method. The Plaintiffs apparently accept this premise as they propound that "where, as here, the lease is silent as to deductible costs, only those costs included in Pennsylvania's definition of the net back method[royalties calculated as one-eighth of the sales price of the gas minus one-eighth of the post-production costs of bringing the gas to the market] may be

deducted." Pls.' Br. at 11.

Although the Vecchio and Morris leases are worded differently from the other Plaintiffs' leases, all the leases contemplate calculation of royalties by the net-back method. This method defines the starting point of the calculation as the point of sale. Gas that does not make it to that destination, therefore, cannot be considered in the calculation. Accordingly, the Plaintiffs' breach of contract claim for recovery of royalties on volumes of gas lost or unaccounted for before the point of sale is foreclosed by <u>Kilmer</u> and it is recommended that the motion to dismiss on this basis be granted.

### 3. Fraudulent Concealment

The statute of limitations for Pennsylvania breach of contract actions is four years. 42 Pa.C.S. § 5525(a)(8).

Statutes of limitations can be tolled due to fraudulent concealment, "an equitable doctrine that is read into every federal statute of limitations." <u>Mathews v. Kidder, Peabody & Company, Inc.</u>, 260 F.3d 239, 256 (3d Cir.2001). To benefit from equitable tolling, plaintiffs must prove: "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." <u>Cetel v. Kirwan</u>

<u>Financial Group, Inc.</u>, 460 F.3d 494, 509 (3d Cir. 2006).

In their amended complaint, the Plaintiffs, anticipating ECA's statute of limitations defense to breaches occurring more than four years before the complaint's filing, claim that they:

> did not discover the breaches of the leases by ECA until the autumn of 2010 because ECA concealed the breaches by issuing accounting statements on the royalty check stubs that contained misrepresentations of material facts and omitted material facts that would have alerted a reasonably diligent lessor of oil and gas rights that the royalty calculations were incorrect. Among other things, each monthly check stub misrepresented the amount of oil and gas produced by each well.

Am. Compl. ¶ 69. The Plaintiffs further plead that the monthly accounting statements included misrepresentations and omission of material facts regarding:

> (i) the volumes subject to the royalty calculation; (ii) the price at which the gas was sold; (iii) the dollar deductions for post production services; (iv) the existence of a corporate relationship between ECA and the provider of some or all of the post production services; and (v) the royalty on oil.

<u>Id</u>. at ¶ 70.

ECA argues that the Plaintiffs' attempt to preemptively claim that the statute of limitations was tolled due to fraudulent concealment cannot succeed because they have failed to plead in conformity with the particularity requirement

of Fed. R. Civ. P. 9(b).  ECA contends that the complaint fails because the Plaintiffs have not pled the "who, what, when, where and how" required to evaluate whether the fraudulent concealment doctrine applies.

There is some discrepancy in the authority as to the specificity requirements when pleading fraudulent concealment to toll a statute of limitations.  In <u>Davis v. Grusmever</u>, 996 F. 617, 624, n.13 (3d Cir. 1993), overruled on other grounds, the Court of Appeals for the Third Circuit delineated the elements of fraudulent concealment needed to toll a statute of limitations and noted that the claim is subject to the heightened pleading requirements of Rule 9(b).  In contrast, in <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F. 3d 1380, 1391 (3d Cir. 1994), the appeals court held that when the sufficiency of a fraudulent concealment claim is challenged via a Fed. R. Civ. P. 12(b)(6) motion to dismiss, all that is required is that the plaintiff plead the applicability of the doctrine.

In the district courts, it appears that the majority of the courts continue to apply the Rule 9(b) particularity standard to fraudulent concealment allegations.  <u>See</u> <u>e.g.</u> , <u>Cehula   v. Janus Distributors, LLC</u>, Civil Action No. 07-113, 2007 WL 3256840, at *6 (W.D. Pa. November 2, 2007)(court determines if plaintiffs have alleged fraudulent concealment with particularity as required by Rule 9(b)); <u>Gee v. CBS, Inc.</u> ,

471 F. Supp. 600 (D.C. Pa. 1979)(all averments of fraud should be pled with particularity). However, at least one district court has criticized application of Rule 9(b) in such instances. See Hoppe v. Smithkline Beecham Corporation, 437 F.Supp. 2d 331, 338, n. 5 (E.D. Pa. 2006)("I am extremely doubtful that [Rule 9(b)'s particularity requirement] applies to plaintiff's request for tolling due to fraudulent concealment"). Two other courts have adopted a hybrid approach to the issue. See Wawrzynek v. Statprobe, Inc., 422 F.Supp. 2d 474, 480 (E.D.Pa. 2005) (although Rule 9(b) requires specificity when alleging fraud, demand for specificity only requires plaintiffs aver facts that give rise to strong inference of fraud) and In re Aspartame Antitrust Litigation, Civil Action No. 2:06-CV-1732, 2007 WL 5215231, at *4 (E.D.Pa. January 18, 2007) (applying the flexible Rule 9(b) standard wherein the Rule is relaxed when factual information is peculiarly within the defendant's knowledge and control).

Considering the divergent thinking on this issue, the Court concludes that the Plaintiffs have adequately pled the who – ECA, the what – misrepresentations and omissions concerning the volume and price of gas, the deductions for post production costs, the corporate relationship between ECA and the provider of its post production services, and the royalty on oil, the when – monthly, the where – the accounting statements, and the

why – to conceal when breaches occurred, to survive a Fed. R. Civ. P. 12 (b) (6) motion to dismiss the fraudulent concealment claim. For this reason, it is recommended that the motion to dismiss the fraudulent concealment claim be denied.

4.) <u>Accounting Demand</u>

In count II of their complaint, the Plaintiffs request an accounting based upon their suspicion that the royalty payments paid under their leases have been incorrectly calculated from the genesis of the agreements.

Pa.R.Civ.P 1021(a) provides for the right to demand an accounting at law: "Any pleading demanding relief shall specify the relief to which the party deems himself entitled. Relief in the alternative or of several different types, including an accounting, may be demanded." "The right to relief in the form of an accounting pursuant to Rule 1021 is merely an incident to a proper assumpsit claim." <u>Buczek v. First National Bank of Mifflintown</u>, 531 A.2d 1122, 1123 (Pa. Super. 1987).

ECA argues that the accounting count must be dismissed because the Plaintiffs have not adequately pled entitlement to an accounting. Particularly, ECA faults the pleading because it does not allege that the Plaintiffs have made a demand upon ECA for an accounting which was refused, that no adequate remedy at law exists, and that a fiduciary relationship exists between the parties.

The Court rejects ECA's argument because it involves legal precepts relative to equitable accountings. The Plaintiffs, however, are seeking a legal, not an equitable, accounting.

To establish a right to an accounting in a breach of contract case, plaintiffs must show that:

> (1) there was a valid contract, express or implied, between the parties whereby the defendant
>
> (a) received monies as agent, trustee or in any other capacity whereby the relationship created by the contract imposed a legal obligation upon the defendant to account to the plaintiff for monies received by the defendant, or
>
> (b) if the relationship created by the contract between the plaintiff and defendant created a legal duty upon the defendant to account and the defendant failed to account and the plaintiff is unable, by reason of the defendant's failure to account, to state the exact amount due him, and
>
> (2) that the defendant breached or was in dereliction of his duty under the contract.

McGough v. Broadwing Communications, Inc., 177 F.Supp.2d 289, 301 (D.N.J. 2001) (quoting Haft v. Unites States Steel, 499 A.2d 676, 677-78 (Pa. Super. 1985)).

Realizing that an accounting demand presupposes that the party seeking the information does not know certain essential facts, a more lenient pleading standard is applied.

See 2 Goodrich-Amran 2d § 1021(a):3 (plaintiff has more freedom to plead generally in demanding accounting). Here, the Plaintiffs have alleged a contractual relationship between the parties which encompasses a legal obligation upon ECA to account. By claiming that the monthly accounting statements prepared by ECA contained misrepresentations and omissions of facts, the Plaintiffs have adequately pled that ECA has failed to account and, therefore, was in dereliction of its contractual duties. These averments are sufficient at this stage to state a claim for an accounting, and it is respectfully recommended that the motion to dismiss the accounting claim be denied.

III. <u>Conclusion</u>

For the reasons stated, it is respectfully recommended that the motion to dismiss (Doc. # 14) be granted in part and denied in part.

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file timely objections may constitute waiver of any appellate rights.

Respectfully submitted,


Dated: June 27, 2011                     s/Robert C. Mitchell
                                         Robert C. Mitchell
                                         U.S. Magistrate Judge