IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID F. POLLOCK, as Executor of the Estate of Margaret F. Pollock, JOHN T. DIBIASE, JR., JOHN S. FRAYTE, PATRICIA L. CHRISTOPHER, LOUIS A. VECCHIO and BESSIE P. VECCHIO, BARBARA A. MORRIS, GENE M. VIRGILI and ERIN R. VIRGILI, LLOYD R. SHAFFER, III, on Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ENERGY CORPORATION OF AMERICA,<br><br>        Defendant. | Civil Action No. 10-1553 |

M E M O R A N D U M   O R D E R

      On June 15, 2012, the parties, Pennsylvania landowners ("Plaintiffs"), who entered into oil and gas leases with defendant Energy Corporation of America ("ECA" or "Defendant"), and ECA filed cross-motions for summary judgment (ECF Nos. 66, 69). On October 24, 2012, a Report and Recommendation (ECF No. 92) was filed by the United States Magistrate Judge recommending that ECA's motion for summary judgment be granted in part and denied in part. It was recommended that the motion be granted on the questions of: 1) the propriety of ECA's allocation methodology; 2) except as to the DiBiase property, the

1

Case 2:10-cv-01553-JFC-RCM   Document 103   Filed 01/24/13   Page 2 of 11

compression/dehydration of the gas from Plaintiffs' wells; 3) the calculation of royalties based upon the net proceeds received from the third-party purchasers; and 4) Plaintiffs' non-entitlement to royalties on the proceeds from certain hedging instruments. It was recommended that the motion be denied with respect to whether ECA properly allocated its marketing costs.

The magistrate judge recommended that Plaintiffs' motion for summary judgment be granted in part and denied in part. It was recommended that the motion be granted on the issue of interstate pipeline charges and denied in all other respects.

On November 7, 2012 both parties filed objections to the Report and Recommendation.

ECA objects to the award of summary judgment in Plaintiffs' favor on the interstate transportation costs claim for three reasons: 1) the evidence does not support Plaintiffs' assertion that ECA deducts interstate transportation costs after the point of sale; 2) the interstate pipeline transportation costs incurred by ECA are valid post-production costs that must be shared by the Plaintiffs; and 3) Plaintiffs did not provide adequate notice of their claim regarding interstate transportation costs.

ECA's objection concerning the insufficient factual

basis for the claim that it deducts interstate transportation costs incurred after the point of sale, was not raised in ECA's response in opposition to Plaintiffs' motion for summary judgment. Instead, ECA questioned whether this claim was alleged in the complaint, and, on the merits, argued only that "regardless of how title to the gas may have been documented in the transactions, the proper inquiry . . . is whether ECA actually incurred the costs that are being assessed against the Plaintiffs' royalty." Def.'s Brief in Opp. at 15 (ECF No. 76). ECA now changes its position on the import of the passage of title and contends that the conclusion that it occurs at the five points where the gas is received into the interstate system is without factual or legal support.

    ECA's objection is without merit.

    First, the Gas Purchase/Sales Contract speaks for itself and dictates that "[t]he title to the gas sold and delivered pursuant to this Contract shall pass from SELLER to BUYER's Purchaser(s) at the Delivery/Receipt point(s) identified [in Limited Term Purchase/Sale Agreements]." Pls.' Amended Concise Statement of Material Facts, Ex. 18, (Gas Purchase/Sales Contract, Art. IV, § 2) (ECF No. 83).

    Second, ECA admitted the fact it now disputes. Paragraph 58 of Plaintiffs' Amended Concise Statement of Facts states:

> 58. The Gas Purchase Confirmations identify five points at which title to the gas passes to EMCO's purchasers. These points are: "640569-Vecchio" (Bates ECA-00456); "Gribwater, Skibwatr & Rigfuel" (Bates ECA-00457 and 00459); "Gribwater & Skibwatr" (Bates ECA 00458 and 00460); and "73465 Greene County/Jefferson Interconnect" (Bates ECA 00462). By contract, therefore, ECA relinquishes title to the gas when the gas is delivered into the interstate pipeline system at these five pipeline receipt points.

ECA responded:

58. Admitted, except that last sentence is a conclusion of law which is denied.

    Paragraph 62 of Plaintiffs' Amended Concise Statement of Facts states:

> 62. ECA passes title to the gas to EMCO's buyers at five receipt points at which gas is received into the interstate pipeline system (see Gas Purchase/Sales Contract (Exh. 18)) and therefore does not own the gas after it enters the interstate pipeline system.

ECA responded:

> Denied. ECA renews its Motion to Strike on the basis that the assertion is a legal conclusion based solely on the Plaintiffs' interpretation of the Gas Purchase/Sales Contract, and specifically, ownership of title in the gas pursuant to the contract. Moreover, Plaintiffs' assertion is irrelevant because ECA incurs and pays the cost of transporting the gas on the interstate pipeline. **See Ex. 2, O'Malley Dec. at ¶ 3.**

(ECF Nos. 82, 89). Thus, ECA admitted that the Gas Purchase Confirmations identify five points at which title to the gas

4

passes to EMCO's purchasers, and objected only to Plaintiffs' characterization of the impact of this title passage on the question of ownership as a conclusion of law.[1]

As concluded in the Report and Recommendation, the significant event concerning the ownership of the gas is the point at which title passes.  At that point, ECA legally does not own the gas.  The Report and Recommendation identified the points at which title passes based upon the facts presented at the time - those five locations identified by Plaintiffs and admitted to by ECA.  If, at trial, ECA can demonstrate that title to Plaintiffs' gas passed from it to third party purchasers at points other than those previously identified during the lawsuit's timeframe, it will have the opportunity to prove the same.

ECA offers new facts in support of its argument that the interstate transportation costs are valid post-production costs that may be shared with Plaintiffs.  These new facts, even if properly presented, do not impact the legal conclusion that <u>Kilmer v. Elexco Land Services,</u> 990 A.2d 1147 (Pa. 2010), defines post-production costs as those "expenditures from when the gas exits the ground until it is sold." <u>Kilmer</u>, 990 A.2d at

---

[1] ECA's renewed motion to strike was not presented in a separate pleading Thus, it was viewed it as an objection to Plaintiffs' factual assertion as representing a legal conclusion.

1149 n.2 Thus, as stated in the Report and Recommendation, "the proper inquiry is the point at which the gas is sold . . . ." Report and Recommendation at 30. Again, if ECA demonstrates that it incurred interstate transportation costs for Plaintiffs' gas while it held title to that gas, under Kilmer, these expenses would fall under the category of post- production costs to be shared by Plaintiffs.

Finally, ECA argues that Plaintiffs' amended complaint and discovery responses were insufficient to put it on notice of the claim that ECA improperly deducted interstate transportation costs. ECA cites to certain of Plaintiffs' discovery responses that were made in support of their earlier theory of recovery in this case and avers that these statements failed to indicate that they sought to recapture these particular costs.

As noted in the Report and Recommendation, Plaintiffs' claim for the subject costs was "reasonably understood as included in the amended complaint's allegation that ECA breached the leases by "`taking excessive and unauthorized expense deductions when calculating the gas royalty'. Am. Compl. ¶ 32." Id. During the course of discovery, Plaintiff responded to certain interrogatories consistent with their theories of recovery, including its later-forfeited assertion that ECA calculated royalties on an incorrect price. At the summary judgment stage, however, Plaintiff did not pursue its allegation

6

concerning the incorrect price and ECA acknowledged that this particular basis for recovery was abandoned. See Def.'s Reply Brief at 8 (ECF No. 85) ("Plaintiffs . . . concede for purposes of summary judgment ... that ECA has paid royalties based on the proceeds received from third-party sales, and not on allegedly "sham" affiliate sales as Plaintiffs previously claimed in their Complaint and discovery responses). ECA cannot now assert that it was misled by Plaintiffs' responses regarding a theory of recovery it knew to be void, catching it unprepared for Plaintiffs' attempt to recoup transportation costs. This is not a situation where the purported basis for Plaintiffs' recovery was so lately contrived that it constitutes unfair surprise.

For these reasons, ECA's objections to the Report and Recommendation are overruled.

Plaintiffs raise the following six objections to the Report and Recommendation: 1) summary judgment was not warranted in ECA's favor on the propriety of ECA's allocation methodology; 2) summary judgment was warranted on Plaintiffs' marketing costs claim; 3) summary judgment was warranted on all of Plaintiffs' claims concerning deduction of compression/dehydration costs; 4) summary judgment was not warranted in ECA's favor concerning calculation of royalties based upon a price less than that paid to ECA; 5) summary judgment was not warranted in ECA's favor regarding proceeds

from ECA's hedge contracts; and 6) Plaintiffs' claim for gas used by ECA off the premises should have been adjudicated on the summary judgment record.

Plaintiffs' objections to the propriety of ECA's allocation of gas and whether ECA properly allocated gathering, compression, and dehydration costs (objections one and three) are, in most part, a reiteration of the arguments presented and rejected in the Report and Recommendation and they do not offer any compelling reason that the legal conclusion should be re-visited. Additionally, Plaintiffs' argument that Pennsylvania law requiring that oil and gas leases be narrowly construed against the lessee abrogates ECA's right to allocate is unavailing. First, the decisions Plaintiffs cite in support, Pomposini v. T.W. Phillips Gas & Oil, 580 A.2d 776 (Pa. Super. Ct. 1990), and Jacobs v. CNG Transmission Corporation, 332 F.Supp. 2d 759 (W.D.Pa. 2004), concern ambiguous lease clauses. Here, the leases are silent on the allocation issue – there is no ambiguity to resolve.

Plaintiffs' second objection is that the recommendation denying summary judgment on the deductibility of marketing costs was based upon an overly-expansive reading of Kilmer v. Elexco Land Services, 990 A.2d 1147 (Pa. 2010). Plaintiffs additionally argue that no issues of fact precluded the award of summary judgment in their favor on this category of costs.

8

Upon review, the court agrees with the view set forth in the Report and Recommendation that Kilmer's recital of post-production costs should not be interpreted as comprehensive and that deduction of marketing costs, generally, is not contrary to law. The court concurs that the unresolved questions of fact concerning the relationship between ECA and its subsidiary, EMCO, and which of these entities incur the marketing costs, preclude summary judgment on this issue.

Objections four and five both concern the recommendation that summary judgment be granted to ECA on Plaintiffs' right to royalties on the upside of hedges benefiting the ECA Marcellus Trust (the "Trust"), a publicly traded trust that owns the rights to receive a portion of ECA's proceeds from the sale of gas from Plaintiffs' wells. The court agrees that ECA's relationship with the Trust is unconnected to its lease obligations with the Plaintiffs.

Plaintiffs' final objection is that the issue of royalties for gas used off the premises should have been adjudicated, rather than deferred. It was recommended that summary judgment be denied to Plaintiffs because ECA did not respond to this argument due to its misinterpretation of the court's prior decision on lost and unaccounted for gas. In the interest of fairness, the recommendation to defer ruling was appropriate.

For these reasons, the court finds that the Plaintiffs' objections are not meritorious.

AND NOW, this 24th day of January 2013, after Plaintiffs filed an amended complaint in the above-captioned case, and after motions for summary judgment were submitted by both parties, and after a Report and Recommendation was filed by the United States Magistrate Judge granting the parties fourteen days after being served with a copy to file written objections thereto, and upon consideration of the objections filed by Plaintiffs and the response filed by the Defendant and upon consideration of the objections filed by Defendant and the response filed by Plaintiffs, and upon independent review of the motions and the record, and upon consideration of the magistrate judge's Report and Recommendation (ECF No. 92), which is adopted as the opinion of this court,

IT IS ORDERED that ECA's motion (ECF No. 66) is granted in favor or ECA on the questions of: 1) the propriety of ECA's allocation methodology; 2) except as to the DiBiase property, the compression/dehydration of the gas from Plaintiffs' wells; 3) the calculation of royalties based upon the net proceeds received from the third-party purchasers; and 4) Plaintiffs' nonentitlement to royalties on the proceeds from certain hedging instruments.

It is ALSO ORDERED that the motion is denied on the

question whether ECA properly allocated its marketing costs.

IT IS ALSO ORDERED that adjudication of the accounting claim is premature.

It is FURTHER ORDERED that Plaintiffs' motion for summary judgment (ECF No. 69) is granted in part and denied in part.  It is ORDERED that the motion is granted in favor of Plaintiffs on the issue of interstate pipeline charges and denied in all other respects.

/s/ Joy Flowers Conti
United States District Judge