IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID F. POLLOCK, et al.,
        Plaintiffs,

vs.

ENERGY CORPORATION OF
AMERICA,
        Defendant.

Civil Action No. 10-1553

## MEMORANDUM OPINION

CONTI, Chief District Judge.

### I. INTRODUCTION

This action is before the court on the Supplemental Report and Recommendation (ECF No. 138) (the "Report and Recommendation"), issued by a magistrate judge on September 16, 2013. Because the facts and applicable law are well known by the parties, the court will discuss only those pertinent to the resolution of this motion for class certification. The magistrate judge recommended that the motion for class certification filed by plaintiffs David F. Pollock, et al. ("plaintiffs") be granted in part and denied in part. Plaintiffs sought certification of the following class:

> All lessors on an oil and gas lease with Energy Corporation of America or Eastern American Energy Corporation that conveys oil and gas rights to real property in Pennsylvania and (1) the lessee deducted charges for interstate pipeline services prior to March 26, 2012 (subclass 1); and/or (2) the lessee deducted marketing fees from the royalties prior to March 26, 2012 (subclass 2); and/or (3) the lessee failed to pay a royalty on gas used as plant fuel off the leased premises (subclass 3).

(ECF No. 106 at 4.) The magistrate judge recommended that the following class be certified:

> All lessors on an oil and gas lease with Energy Corporation of America or Eastern American Energy Corporation that conveys oil and gas rights to real property in Pennsylvania and:
>
> (1) the lessee deducted charges for interstate pipeline services between November 22, 2006 and March 26, 2012 (subclass one); and/or
>
> (2) the lessee deducted marketing fees from royalties between November 22, 2006 and March 26, 2012 (subclass two).

(ECF No. 138 at 38.) The magistrate judge recommended that class certification be denied with respect to proposed subclass three because it did not meet Federal Rule of Civil Procedure 23's requirements of commonality, typicality or predominance. (Id. at 39.) The parties were served with the Report and Recommendation and filed written objections thereto.[1]

II. OBJECTIONS

A. Plaintiffs' Objections

Plaintiffs object to the Report and Recommendation on the basis that it did not recommend certifying subclass three because it did not meet the Federal Rule of Civil Procedure 23 factors of commonality, typicality or predominance. Plaintiffs argue that subclass three meets the requirements of Federal Rule of Civil Procedure 23 and should be certified. (ECF No. 141 at 1.) Plaintiffs argue that if the court denies certification to subclass three, they should be granted a period of discovery to buttress their argument in support of certification. (Id. at 5, n.1.)

---

[1] The court extended the truncated timetable established by the magistrate judge for the submission of objections to the Report and Recommendation, and indicated that counsel should contact the district judge if they were unable to adhere to the modified schedule. Having received the objections in accordance with the modified schedule, it is apparent that the parties had sufficient time and opportunity to file their objections and responses.

2

1. Subclass Three

Plaintiffs argue that as to subclass three, the amount of compressor fuel and dehydrator fuel deducted from each well's production can be shown through common proof. (Id. at 2.) Specifically,

> ECA's gas is produced from individual wells and then transported through a 'gathering system' from which it is received into the interstate pipeline system at various receipt points. A third party contractor, Gas Analytical Services, Inc., determines how much of the aggregate gas delivered into the interstate pipeline system should be allocated back to each well for royalty purposes. . . . As the Gas Allocation Statements and Sly testimony show, ECA allocates to each well its pro rata share of the aggregate gas delivered into the interstate pipeline system. It does this by multiplying the aggregate gas delivered into the pipeline system times a fraction consisting of the individual well's production as the numerator over the production of all wells measured at the wellhead. Thus, each well's gas production, for royalty purposes, is its production at the wellhead less the well's pro rata share of the retainage. Gas Analytical Services, Inc. prepares separate monthly Gas Allocation Statements for each receipt point into the interstate pipeline system. The gas of each well flowing to that receipt point absorbs its pro rata share of the aggregate compressor and dehydrator fuel used to compress and dehydrate all gas flowing to that receipt point. Thus, the amount of fuel taxed (to) each well is the well's share of the aggregate wellhead production multiplied by the aggregate compressor and dehydrator fuel.

(Id. at 2-3.)

Plaintiffs argue that the amount of compressor fuel and dehydrator fuel deducted from each well's production can be shown through common proof because the Gas Allocation Statements state "the amount of gas used as compressor fuel . . . and the amount of gas used as dehydrator fuel. . . . It can be precisely determined through common proof how much of the aggregate compressor and dehydrator fuel was taxed to each well flowing to the receipt point." (Id. at 3.) Plaintiffs assert that "the Gas Allocation Statements only report gas lost or used *on the gathering system* (the retainage). Thus, by definition, the "comp. fuel" and "dehy. fuel" reported

3

on the Statements is gas used *off* premises." (Id. at 4 (emphasis in original).) Lastly, plaintiffs argue that neither of the free use clauses allows ECA to avoid paying a royalty for gas used off the premises, and this is a legal defense that does not disqualify certification. (Id. at 4.)

Defendant Energy Corporation of America ("ECA") responds that plaintiffs cannot satisfy commonalty as to subclass three because one example of a Gas Allocation Statement from a single gathering system does not support a finding

> that the gas that fuels compressors and dehydrators is measured on every gathering system in Pennsylvania. In fact, Plaintiffs have admitted that the "Gas Allocation Statements report the amount of gas that is used to fuel *some* of the larger compressors on ECA's gathering system." The vast majority of the gathering systems for ECA wells in Pennsylvania *do not* include a system to measure fuel use and thus do not utilize the columns on the Gas Allocation Statements that Plaintiffs refer to. (Thus,) Plaintiffs have failed to point to any common proof of the volume of gas used off premises versus the volume of gas that is lost and unaccounted for.

(ECF No. 142 at 6 (citations omitted) (emphasis in original).) ECA contends that subclass three does not meet commonality requirements because plaintiffs assume that the compression and dehydration that occurs on the gathering system must be off the leased premises. Yet, this assumption cannot be true because there are compression stations on both the Henderson/Cumberland and Vecchio property. (Id. at 6.) ECA argues that subclass three does not meet typicality requirements because the differing lease provisions, (free use of gas off "of the lease premises" versus "on the premises") subjects members of the class to differing defenses dependent upon the language in their leases. (Id. at 7-8.)[2]

---

[2] Additionally, ECA argues that plaintiffs failed to prove that subclass 3 is sufficiently numerous. (ECF No. 142 at 8-11.) However, because this argument was not raised in ECA's objections, but in the response to plaintiffs' objections, the court will not consider it here.

4

Like the magistrate judge, the court is unconvinced that plaintiffs met the requirements of Rule 23 for subclass three. Plaintiffs did not meet their burden to establish that it can be shown through common proof that the gas was used "off" the leased premises. Plaintiffs' assertion that the Gas Allocation Statements report the amount of gas used on *some* of the *larger* compression stations leaves open ECA's argument that some of the ECA wells do not include a system to measure the fuel used, and, thus, Gas Allocation Statements could not systematically establish fuel use. Instead, the court would have to discern each separate lease, the location of the well, and the location of the compressor, and perhaps individually track each unit of gas to determine where it was eventually used as plant fuel. Although the individual calculation of damages alone does not negate a finding of commonality, here, it would be impossible for the court to determine the amount of damages owed to a lessee without reviewing each monthly Gas Allocation Statement and scrutinizing it against the amount of gas actually produced at the well for each purported class member and each member's monthly royalty payment.

With respect to typicality, there are factual circumstances individual to each class member regarding their individual lease provisions. There are also varying lease provisions concerning the gas used off premises that will be a main focus of subsequent litigation, i.e., individual inquiries would transcend common issues. Plaintiffs' argument that there is a pending summary judgment motion is untrue. Plaintiffs' contention that the differing lease provisions argument is a "legal defense," is not properly heard here. The court denied summary judgment on this issue. Accordingly, plaintiffs' objections are overruled.

2. Class Discovery

Plaintiffs argue that if subclass three is denied certification, plaintiffs should be permitted class discovery. (ECF No. 141 at 5, n. 1.) For the following reasons, plaintiffs' objection is overruled. Plaintiffs argue that the magistrate judge stayed class certification and class discovery until the summary judgment proceedings were concluded. (Id. at 5, n. 1.) Plaintiffs' argument, however, is raised for the first time in its objections and is necessarily waived.

Even if the issue was not waived, plaintiffs' objection is overruled. Plaintiffs misrepresent the magistrate judge's administrative orders. On September 19, 2011, the magistrate judge entered an order placing class discovery on hold pending the production of named class members. (ECF No. 33.) At the next conference, the magistrate judge entered an order which stated: "Class certification held in abeyance pending disposition of partial summary judgment on liability . . . . Discovery on liability ends March 31, 2012(,)" and set the schedule for filing cross-motions for summary judgment. (ECF No. 41.) The next conference was held on April 12, 2012 and an order was entered resolving discovery disputes. (ECF No. 62.) ("Defendant to ("Defendant to review its answers to Interrogatories ##2 and 3(;) Interrogatories ##4 and 5(;) Defendant to provide spread sheets regarding sales and post-production costs(;) Defendant to provide listing of suits filed for royalties in Ohio, West Virginia, and Pennsylvania for the last five years(;) . . . Two witnesses to be deposed by May 11, 1012."). Plaintiffs deposed ECA's vice president of accounting, George O'Malley (ECF No. 68-1) and vice president of marketing, Randall Farkosh (ECF No. 68-2) on May 10, 2012, and deposed the president of Gas Analytical Services, George Sly (ECF No. 68-4) on March 14, 2012. Plaintiffs received leases from ECA (ECF No. 83-2); Gas Allocation Statements from Gas Analytical Services (ECF No. 83-3); an affidavit of John T. Diabase; the Gas Purchase/Sales Agreement between ECA and

EMCO (ECF No. 83-19) and a Check Stub from Royalty Payment to plaintiff Stuart Whipkey (ECF No. 83-20.) Plaintiffs' argument that they had no meaningful opportunity to conduct class discovery is incorrect. The magistrate judge's application of the discovery rules to the instant action was not, as plaintiffs would have the court find, an abuse of discretion.

Under Federal Rule of Civil Procedure 23(c)(1), a court must make a class determination "as soon as practicable." FED. R. CIV. P. 23(c)(1). The record is sufficient for the court to make a determination of the class certification motion. Only where a court makes a "determination on the class certification question without any discovery and prior to plaintiff's filing a class certification motion(,)" is a remand appropriate. Heerwagen v. Clear Channel Communications, 435 F.3d 219, 233 (2d Cir. 2006) (disagreed with on other grounds by Salatino v. Chase, 936 A.2d 482 (Vt. 2007)); see Parker v. Time Warner Entertainment Co., L.P., 331 F.3d 13, 21-22 (2d Cir. 2003). Had plaintiffs wished to forestall class certification proceedings in order to conduct discovery, they could have filed a motion to hold the motion for class certification in abeyance or to lift the supposed stay on discovery. Regardless whether the order on the motion for summary judgment reopened the period for class discovery, plaintiffs were given a meaningful opportunity to conduct, and did conduct, discovery on their claims. Accordingly, plaintiffs' objection is overruled.

### B. Defendant's Objections

ECA objects on the grounds that plaintiffs failed to prove numerosity, commonalty, typicality and predominance under Rule 23 for any of the three proposed subclasses. For the following reasons, ECA's objections are overruled.

7

1. Numerosity

ECA first argues that numerosity was not satisfied for subclass one or two because plaintiffs "did not offer any evidence establishing that the number of potential subclass members is sufficient to justify class certification." (ECF No. 140 at 11.) With respect to subclass one, "(n)ot all of ECA's Pennsylvania lessees have a claim for interstate transportation costs because ECA has not incurred, and therefore has not deducted, interstate transportation costs on the gas from those wells." (ECF No. 140 at 12.) It argues, "instead, the vast majority of interstate transportation charges at issue here are limited to gas flowing on the A.C. Nielsen gathering line in Greene County, Pennsylvania under the single firm transportation contract that applies to plaintiffs' wells and was produced in discovery." (Id. at 13-14.) With respect to subclass two, ECA argues that numerosity is not met because "Plaintiffs rely solely on two Gas Control Statements showing that EMCO billed ECA marketing fees of $216,156.00 and $241,935.20. They offer no evidence of the number of potential class members who has been charged marketing fees or whose leases prohibit that charge." (Id. at 14.)

In the Report and Recommendation the magistrate judge found that there was enough circumstantial evidence to support a finding of numerosity for subclass one, and stated in pertinent part:

> (I)t is more likely than not that subclass one consists of more than forty members. Plaintiffs need not show a precise calculation of the members in the class. Given the total number of ECA leases in Pennsylvania, the amount of gas transported into the interstate system, compared with the Royalty Check Stubs, and the ten transportation agreements in Pennsylvania, it is more likely than not that over forty lessors were allegedly improperly deducted interstate transportation charges during the operative time frame.

(ECF No. 138 at 13.) With respect to subclass two, the magistrate judge in the Report and Recommendation found that there was enough circumstantial evidence to support a finding of

8

numerosity for subclass two, and stated in pertinent part:

> Only a purported 8% of the marketing fees that EMCO billed ECA in September 2011 alone totaled $458,091.20. If Plaintiffs can prove their claim that the marketing costs were improperly deducted, it is likely that more than forty lessors in Pennsylvania had marketing costs deducted before March 26, 2012 from their royalties. Taking into consideration the large amount of marketing fees paid to EMCO on only 8% of its Pennsylvania wells and the entire amount of active wells in Pennsylvania, it is more likely than not that the class exceeds forty members and joinder of all would be impracticable.

(Id. at 25.) The court agrees with those conclusions for the same reasons set forth in the Report and Recommendation. Therefore, ECA's objection that subclass one and two are not numerous is overruled.

2. Commonality

ECA argues that the magistrate judge erred in finding that the commonality factor of Rule 23(a) was met for subclasses one and two. Specifically, ECA argues:

> There is no single contention common to all the proposed class members and capable of classwide resolution because the royalty provisions of the purported class members' leases differ in ways that are critical to the transportation and marketing claims. Leases executed in 2007 and later expressly permit ECA to deduct transportation and marketing costs associated with the sale of the gas regardless of whether those costs were incurred by ECA, its affiliate or a third party. Accordingly, putative class members with royalty provisions that include this express authorization do not have a claim that the deduction of transportation and marketing costs breached their leases.
>
> These differences in lease language necessarily preclude class certification. Courts that have analyzed motions to certify classes in gas royalty cases post *Wal-Mart* have found that the differences in the operative lease language and the resulting differenced in liability preclude, or could preclude, a finding of commonality.

(ECF No. 140 at 16.)

9

While ECA is correct that courts have frequently denied certification where the contract provisions were different between lease holders, as the magistrate judge stated, that reasoning does not apply here. Whether the class members have differing lease provisions is of no consequence with respect to subclass one and two because, in this case, liability turns on the legal relationship between ECA and EMCO and the ownership of the gas.

Subclass one's claim can be adjudicated through common proof. As the magistrate judge correctly found, "[i]f Plaintiffs prove that when ECA transferred the gas to EMCO, EMCO in fact held title to the gas upon the point of transfer, any transportation charges incurred post-sale would constitute a breach of the lease for wrongfully deducted charges regardless of the lease form." (ECF No. 138 at 16.) Likewise, subclass two's claim can be adjudicated through common proof. Proof of the legal relationship between ECA and EMCO, which entity incurred the marketing costs, and whether ECA incurred any bona fide marketing fees disposes of the ultimate question about whether those costs were properly assessed to plaintiffs. The court finds that commonality is satisfied and accordingly, ECA's objection is overruled.

3. Typicality

ECA argues that the named class members in subclasses one and two do not have claims that are typical of the class. Specifically, ECA argues that because plaintiffs' breach of contract claims are "governed by different lease language, the class representatives do not even share identity of claims with one another." (ECF No. 140 at 23.) ECA argues that "some of the named Plaintiffs and subclass members have leases that expressly permit ECA to deduct the transportation and marketing costs that are the subject of two of the remaining claims." (Id.)

Plaintiffs respond that "(t)his language simply allows ECA to deduct costs regardless of whether it incurs them directly or through the agency of another. It does *not* mean that it can deduct costs *incurred post sale.* The deduction of costs incurred post sale is prohibited by the GMRA." (ECF No. 143 at 9 (emphasis in original).)

The court finds that typicality is satisfied for subclasses one and two. In the Report and Recommendation the magistrate judge found that class one was typical because both the named plaintiffs and the class assert that all post-sale interstate transportation charges and marketing fees deducted from royalties constitutes a breach of the leases, therefore the legal theory advanced is typical of the class; the factual circumstances underlying the claim are typical, because they hinge on the relationship between ECA and its subsidiary EMCO; ECA did not identify any tenable defenses it could raise to any one individual class member that are likely to become the focus of the litigation; and the interests and incentives of the named plaintiffs are aligned with the class because resolution of the named plaintiffs' transportation and marketing charges claims would dispose of the claims as a class. (ECF No. 138 at 18-19, 26-27.) The question whether ECA engaged in any bona fide marketing activity is a claim typical of the class. Accordingly, ECA's objection is overruled.

4. Predominance

Lastly, ECA objects to the magistrate judge's finding that subclasses one and two have common issues that predominate under Rule 23(b)(3). ECA recycles its argument based on differing lease provisions and claims: "whether any given lessor can assert a particular claim depends on the language of that lessors lease." (ECF No. 140 at 24.) It argues that while "some of the leases explicitly permit[] ECA to deduct interstate transportation and marketing costs

associated with the sale of gas whether those costs are incurred or charged by ECA, an affiliate or a third party(,)" other leases do not. (Id. at 25.)

The court finds that common issues predominate over individual ones. Plaintiffs can prove their interstate transportation charges claim by showing that EMCO owned title to the gas and incurred those charges, yet ECA deducted those charges from royalty payments. Damages will consist of the amounts deducted from the royalty payments. Likewise, plaintiffs can prove their marketing costs claim by showing that ECA incurred those fees after it sold the gas, or by otherwise demonstrating that the costs were not bona fide. Damages will again consist of the amounts deducted from the royalty payments for marketing fees. Accordingly, ECA's objection is overruled.

### III. CONCLUSION

Because the court finds that none of the objections to the magistrate judge's Report and Recommendation are sustainable, it denies the same. An appropriate order will be filed contemporaneously with this opinion.

Dated: September 30, 2013

Joy Flowers Conti
United States Chief District Judge