IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID F. POLLOCK, *as executor of the estate of Margaret F. Pollock,* JOHN T. DIBIASE, JR., JOHN S. FRAYTE, STUART W. WHIPKEY, PATRICIA L. CHRISTOPHER, LOUIS A. VECCHIO and BESSIE P. VECCHIO, BARBARA A. MORRIS; GENE M. VIRGILI and ERIN R. VIRGILI, and LLOYD R. SHAFFER, III, *on behalf of themselves and all others similarly situated,*<br><br>                    Plaintiffs,<br><br>        vs.<br><br>ENERGY CORPORATION OF AMERICA,<br><br>                    Defendant. | Civil Action No. 10-1553<br><br>Magistrate Judge Robert C. Mitchell |

## MEMORANDUM OPINION[1]

ROBERT C. MITCHELL, United States Magistrate Judge.

I.  INTRODUCTION

Presently before the Court for disposition are the following motions: (1) ECA's Motion for Summary Judgment [ECF No. 167]; and (2) Plaintiffs' Cross Motion for Summary Judgment [ECF No. 170]. The motions are fully briefed and ripe for disposition. For the following reasons, ECA's Motion for Summary Judgment [ECF No. 167] is denied; and Plaintiffs' Cross Motion for Summary Judgment [ECF No. 170] is denied.

---

[1]  All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

1

## II. BACKGROUND

Because the factual background of this case has been discussed extensively in prior opinions issued by the Court, *see Pollock v. Energy Corp. of America*, 2013 WL 5338009 (W.D.Pa. Sept. 16, 2013) *adopted by* 2013 WL 5491736 (W.D.Pa. Sept. 30, 2013) (decision on class certification); *Pollock v. Energy Corp. of America*, 2012 WL 6929174 (W.D.Pa. Oct. 24, 2012) adopted by 2013 WL 275327 (W.D.Pa. Jan. 24, 2013) (decision on motion for summary judgment); *Pollock v. Energy Corp. of America*, 2011 WL 3667289 (W.D.Pa. June 27, 2011) adopted by 2011 WL 3667385 (W.D.Pa. Aug. 22, 2011) (decision on motion to dismiss), only the facts necessary for the disposition of the present motions will be recounted.

Generally, the named Plaintiffs are class representatives who entered into oil and gas leases with Defendant, Energy Corporation of America, ("ECA"), a company engaged in the production of oil and gas. Plaintiffs claim that ECA underpaid royalties in various ways including deducting interstate transportation charges and marketing charges from Plaintiffs' royalties when such charges were not incurred or incurred after the gas was sold. The Court certified two subclasses with respect to Plaintiffs' claims:

> All lessors on an oil and gas lease with Energy Corporation of America or Eastern American Energy Corporation that conveys oil and gas rights to real property in Pennsylvania, and
>
> (1) the lessee deducted charges for interstate pipeline services between November 22, 2006 and March 26, 2012 (subclass one) and/or
>
> (2) the lessee deducted marketing fees from the royalties between November 22, 2006 and March 26, 2012 (subclass two).

9/30/2013 Order [ECF No. 145]. While the Plaintiffs' lease provisions are not identical, the leases all generally provide that the Plaintiffs are entitled to a royalty of one-eighth of the net proceeds received from the sale of gas.

The Court has previously granted Plaintiffs' summary judgment for interstate transportation charge deductions that were incurred after ECA transferred title of the gas to third party purchasers at the five points where the gas is received into the interstate pipeline system. Rep. and Rec. [ECF No. 92] at 29, *adopted by* Memo. Order [ECF No. 103]. The Court found:

> [T]he proper inquiry is the point at which the gas is sold, and not . . . whether ECA actually incurred the interstate pipeline transportation costs. On this point, it is undisputed EMCO buys the gas from ECA. It is also undisputed that, under the terms of the Gas Purchase/Sales Contract, ECA retains title to the gas until it passes to third party purchasers at the five points where the gas is received into the interstate system. Thus the gas is "sold" at these points and ECA cannot recover costs incurred thereafter.

*Ibid*.

With respect to the marketing charges deducted from Plaintiffs' royalties, the Court has previously addressed the issue of whether the Pennsylvania Supreme Court's decision in *Kilmer v. Elexco Land Servs.*, 990 A.2d 1147 (Pa. 2010) allows marketing cost deductions from royalties and which entity, ECA or its marketing subsidiary, EMCO, actually incurred the marketing costs. *See* Rep. and Rec. [ECF No. 92] at 18, *adopted by* Memo. Order [ECF No. 103]. It was previously explained that *Kilmer* defined a "royalty" in the natural gas industry as the "landowner's share of production, free of expenses of production." *Ibid*. (citations omitted). Expenses from production include those "costs incurred in drilling wells and bringing the product to the surface, *but exclude the post-production costs of transporting the oil/gas from the wellhead to the point of sale.*" *Ibid*. (citing *Kilmer*, 990 A.2d at 1157) (emphasis added). The Court found that under *Kilmer*, post-production costs properly deducted from royalties include marketing costs and transportation charges. *Ibid*.

The Court ultimately denied ECA's motion for summary judgment on the question of whether it was proper for ECA to deduct marketing costs as a post-production cost from the

Plaintiffs' royalties and found that the nature of the transactions governed by the contract between ECA and EMCO is ambiguous because while the Gas Purchase/Sales Contract described EMCO as the buyer of the gas, it also provides that EMCO never holds title to the gas. *Ibid*. at 23.  Additionally, the Court found that a dispute existed as to "whether the post-formation behavior of the parties constituted an oral modification of the contract." *Ibid*.

### III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A moving party is entitled to summary judgment if he demonstrates that "the nonmoving party has failed to make a sufficient showing of an essential element of [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The nonmoving party bears the burden of adducing palpable evidence "establishing that there is a genuine factual dispute for trial" and may not merely rely upon "bare assertions or conclusory allegations" to survive summary judgment. *Hogan v. Twp. of Haddon*, 278 F.App'x 98, 101 (3d Cir. 2008) (citing *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982)).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied [only] when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if proof of its existence or non-existence might affect the outcome of the case. *Anderson,* 477 U.S. at 248.  Thus, the dispute must be material, by affecting the outcome of the case, and must be genuine, meaning there is evidence such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 248.  "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v.*

4

*Lucent Techs., Inc.*, 78 F.Supp.2d 402, 407 (E.D.Pa. 2000). The court should draw inferences "in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) *cert. denied* 507 U.S. 912 (1993).

Where the parties have filed cross-motions for summary judgment, the United States Court of Appeals for the Third Circuit has explained that it is

> no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008) (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). A district court must then apply the same legal standard to cross-motions for summary judgment as would be applied to a single motion. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 2001). Thus, both the Plaintiffs and Defendant must demonstrate that no genuine issue of material fact exists and if both parties fail to demonstrate this, the court must deny the motions. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008).

## IV. DISCUSSION

### a. ECA's Motion for Summary Judgment

ECA now moves for summary judgment on the class claims and argues that Plaintiffs cannot prove damages because there is no evidence that ECA took any deductions from Plaintiffs' royalties. ECA points to the testimony of Plaintiffs' expert, Julia Bodamer, in which she stated that ECA did not take any deductions for marketing and interstate transportation

charges from Plaintiffs' royalties on the sales of gas to EMCO. ECA argues that because there is no evidence of damages, it is entitled to summary judgment.

The Court disagrees with ECA's appraisal of Bodamer's testimony. Taking all of her testimony and her expert report into consideration, along with other record evidence, there remain material issues of fact with regard to the deductions taken from Plaintiffs' royalties, such that it is reasonable to conclude that damages were sustained by Plaintiffs. Plaintiffs argue that the interaction between ECA, EMCO and third party purchasers are as follows: (1) the third party purchasers were instructed to pay the gross sales price to ECA, (2) the third party purchasers made their payments directly to ECA, (3) ECA deducted costs from the payments from the third parties using arithmetical calculations provided to it by EMCO in monthly Gas Control Statements; and (4) ECA calculated the Plaintiffs' royalties based on the payments it received from the third parties less costs that ECA deducted from those payments. *See* Pls.' Mot. for Summ. J. [ECF No. 170] at ¶ 5. Additionally, in Bodamer's expert report, she concluded that marketing fees and interstate transportation charges were deducted from the gas royalties of some or all of the Plaintiffs and relied on the testimony of Randall Farkosh, EMCO's Vice President and ECA's Vice President of Marketing, and George O'Malley, ECA's Vice President of Accounting, and the Gas Control Statements to come to this conclusion.

Specifically, as to the charges deducted from Plaintiffs' royalties, Farkosh testified:

> Q.  … end users pay no fee to EMCO; is that correct?
>
> A.  That's correct.
>
> Q.  Does EMCO charge a fee for its marketing services?
>
> A.  Yes.
>
> Q.  To whom does it charge that fee?

> A.      ECA
>
> Q.      And what is the amount of that fee?
>
> A.      $0.15 per decatherm [sic].
>
> Q.      Are there invoices sent from . . . EMCO to ECA . . . for that marketing fee?
>
> A.      No.
>
> Q.      And . . . are there payments made from . . . ECA to – to EMCO for . . . that service?
>
> A.      No.
>
> Q.      And how is that $0.15 account for, then?  I mean, presumably ECA in some same is – is paying EMCO? I'm trying to find out what the form of the payment is.
>
> A.      There is a deduction from the amount that EMCO pays to ECA of the $0.15 per decatherm [sic].

Farkosh Dep. [ECF No. 179-3] at 41-42.  Likewise, O'Malley testified:

> Q.      . . . This is a royalty statement.  There is a column called "Price," and you'll see here for the Henderson King well for September 2011 there is a price of $3 and it rounds up to $0.08, $3.08.  Do you see that?
>
> A.      I do.
>
> Q.      Am I correct in thinking that that price is the sale price of the gas less certain costs?
>
> A.      What that number represents, as I stated earlier, is the amount of dollars on the statement divided by the amount of volume on the statement is what that number is.  That's what that's equal to and that's how it's determined.
>
> A.      Do you know whether royalty owners . . . are they responsible for any share of the costs incurred between the well and the point of sale?
>
> . . .

> Q. Are those costs reflected in this statement?
>
> A. Yes, sir.
>
> Q. And what are those costs that are reflected in this statement?
>
> A. Again, generally speaking, would be the $0.52 gathering fee for the ECA Greene County gathering system, the $0.15 gas aggregation fee as we refer to it, and any firm transportation that's applicable.
>
> Q. And in determining the number on the royalty statement, does your department receive the dollar amounts of those various expenses?
>
> A. I believe so, yes.
>
> Q. And as far as you know, it's those – those are the three cost expenses that are – that are incurred, gathering[,] . . . aggregation or marketing, and interstate transportation fee. Those are the three dollar expenses that you're aware of that are . . . factored into the royalty calculation?
>
> A. Again, yes, generally speaking. I mean, like I said, speaking more currently, yes, those are the charges I'm aware of.

O'Malley Dep. [ECF No. 179-15] at 48-50.

Viewing the evidence of record in its entirety, there is testimony that ECA takes deductions from Plaintiffs' royalties with respect to interstate transportation charges and marketing charges. Accordingly, ECA's motion for summary judgment is denied.

    b. <u>Plaintiffs' Motion for Summary Judgment</u>

Plaintiffs move for summary judgment and ask this Court adopt their "rendition of the facts" over ECA's and award them a principal amount of $920,000.[2]

---

[2] The facts that Plaintiffs seek this Court to recognize are as follows: "(1) the third party buyers were instructed to pay the gross sales price to ECA, (2) the third party buyers made their payments directly to ECA, (3) ECA deducted costs from the payments using arithmetical computations provided to it by EMCO in monthly Gas Control Statements, (4) ECA calculated

8

As previously explained by the Court, there are remaining issues of material fact surrounding Plaintiffs' remaining claims. Namely, as for the interstate transportation charges, issues of fact exist as to how much ECA deducted from Plaintiffs' royalties in context of when the interstate transportation charges were deducted. As mentioned *supra*, the Court previously found that the gas is sold at the five points where the gas is received into the interstate pipeline system and therefore ECA could not deduct interstate transportation charges from Plaintiffs' royalties.

As noted in previous decisions, issues of material fact exist with regard to the marketing charges deducted from Plaintiffs' royalties as to the interactions between ECA and EMCO, who incurred the marketing charges and whether marketing charges were deducted post-sale.

Accordingly, Plaintiffs' motion for summary judgment is denied.

An appropriate Order follows.

## V.     CONCLUSION

Based on the foregoing, ECA's Motion for Summary Judgment [ECF No. 167] is denied; and Plaintiffs' Cross Motion for Summary Judgment [ECF No. 170] is denied.

Dated: February 2, 2015

By the Court,

/s Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

---

the Plaintiffs' royalties based on the payments it received from the third parties less costs that ECA deducted from those payments, and (5) two of the costs that ECA deducted from the gross proceeds -- the interstate transportation costs and the marketing fees − were improper because they were incurred after ECA sold the gas." Pls.' Mot. for Summ. J. [ECF No. 170] at ¶ 5.

cc: Robert C. Sanders, Esquire
William R. Caroselli, Esquire
*Counsel for Plaintiffs*

Kevin C. Abbott, Esquire
Justin H. Werner, Esquire
Nicolle R. Snyder Bagnell, Esquire
Stacey L. Jarrell, Esquire
*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID F. POLLOCK, *as executor of the estate of Margaret F. Pollock,* JOHN T. DIBIASE, JR., JOHN S. FRAYTE, STUART W. WHIPKEY, PATRICIA L. CHRISTOPHER, LOUIS A. VECCHIO and BESSIE P. VECCHIO, BARBARA A. MORRIS; GENE M. VIRGILI and ERIN R. VIRGILI, and LLOYD R. SHAFFER, III, *on behalf of themselves and all others similarly situated,*<br><br>           Plaintiffs,<br><br>     vs.<br><br>ENERGY CORPORATION OF AMERICA,<br><br>           Defendant. | Civil Action No. 10-1553<br><br>Magistrate Judge Robert C. Mitchell |

## **ORDER**

AND NOW, this 2nd day of February, 2015, after consideration of ECA's Motion for Summary Judgment [ECF No. 167], and Plaintiffs' Cross Motion for Summary Judgment [ECF No. 170], along with the attendant briefs and responses,

IT IS HEREBY ORDERED that ECA's Motion for Summary Judgment [ECF No. 167] is **DENIED**, and Plaintiffs' Cross Motion for Summary Judgment [ECF No. 170] is **DENIED**.

By the Court,

/s Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

cc: Robert C. Sanders, Esquire
William R. Caroselli, Esquire
*Counsel for Plaintiffs*

Kevin C. Abbott, Esquire
Justin H. Werner, Esquire
Nicolle R. Snyder Bagnell, Esquire
Stacey L. Jarrell, Esquire
*Counsel for Defendant*